Morgan A. ROBERTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 53003.

Court of Criminal Appeals of Texas.

Jan. 5, 1977.

Rehearing Denied Jan. 26, 1977.

Robert J. Kuhn, Austin, for appellant.

Ted Butler, Dist. Atty., Gus E. Wilcox, E. Dickinson Ryman and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of possession of heroin; the punishment, which is enhanced by prior felony convictions, is imprisonment for life.

Two grounds of error are presented. The appellant urges that the heroin and his confession were both obtained unlawfully in violation of his constitutional rights; therefore, he says, they were erroneously admitted in evidence.

The heroin was obtained incident to the appellant's arrest. He asserts that the State failed to show, at the time of trial, that there was probable cause for his warrantless arrest. The appellant filed a motion to suppress the heroin which he alleged was unlawfully obtained. See Art. 28.01, V.A.C.C.P. A hearing on that motion was commenced on July 16, 1975, but was recessed because a witness was unavailable. On October 8th, just prior to the trial on the merits, the court heard the remainder of the testimony on the motion to suppress and overruled the motion. After the trial on the merits commenced the appellant's counsel renewed his objection to the admission of the heroin on the grounds that it had not been shown that the heroin was lawfully obtained. The State at the trial on the merits did not offer the testimony of the witnesses to show probable cause for the arrest nor did the State reintroduce the evidence heard on the motion to suppress. Although the appellant argues that probable cause was not shown during the motion to suppress, he insists, even if it were, that his objection at the trial on the merits placed the burden on the State of again showing that the appellant's arrest was lawful.

This Court has held that a defendant, to preserve error on appeal, need not renew during the trial on the merits an objection made at a pretrial motion to suppress. *Riojas v. State,* 530 S.W.2d 298 (Tex. Cr.App.1975), and *Graves v. State,* 513 S.W.2d 57 (Tex.Cr.App.1974). The corollary is that the State, if it wishes to do so, may rely upon the evidence showing probable cause heard during the motion to suppress and need not again offer evidence at the trial on the merits to show probable cause for the arrest. The statute provides that the record made at a pretrial hearing to suppress evidence, the rulings of the court and the objections and exceptions thereto shall become a part of the trial record of the case on its merits. Art. 28.01, Sec. 2, V.A.C.C.P.

The defendant's counsel may either file a pretrial motion to suppress evidence or he may wait until the trial on the merits and object when the alleged unlawfully obtained evidence is offered. The trial court, to determine whether there is probable cause for an arrest, has the option of either hearing a motion to suppress the evidence prior to trial or of the waiting until the defendant's counsel makes an objection at the trial on the merits when the alleged unlawfully obtained evidence is offered. *Bosley v. State,* 414 S.W.2d 468 (Tex.Cr.App.1957); *Hicks v. State,* 508 S.W.2d 400 (Tex.Cr.App.1974). Whether the issue of the unlawful arrest is presented in a pretrial hearing to suppress or during the trial on the merits, the State has the burden of showing that there was probable cause for a warrantless arrest. Contrary to

the appellant's argument there is no difference in the State's burden of proof whether the issue is presented at a pretrial motion to suppress hearing or at the trial on the merits.

The appellant also argues that he is entitled to have the jury hear the evidence and to then make a determination of whether there was probable cause for his arrest; he cites Art. 38.23, V.A.C.C.P. Even though he was granted a pretrial hearing to suppress the evidence, he says that after his objection was made at the trial the State must again "shoulder the burden" before the jury and show probable cause for the appellant's warrantless arrest. This position is untenable; generally, much of the evidence supporting probable cause is hearsay and would be, if offered by the State as original evidence, inadmissible before the jury. *Barber v. State,* 481 S.W.2d 812 (Tex.Cr.App.1972); *Cabrera v. State,* 395 S.W.2d 34 (Tex.Cr.App.1965); *Wood v. State,* 166 Tex.Cr.R. 319, 313 S.W.2d 615 (1958). If the appellant wishes to raise issues of fact before a jury to obtain a jury instruction as provided for in Art. 38.23, V.A.C.C.P. concerning probable cause for his arrest, he may attempt to do so. See *Rose v. State,* 470 S.W. 198 (Tex.Cr.App. 1971). However, if before a jury, the appellant makes probable cause for arrest an issue, evidence to show probable cause, including hearsay evidence, would become admissible. See *Lacy v. State,* 424 S.W.2d 929 (Tex.Cr.App.1968).

We have answered the appellant's contentions, and we must now determine from the record whether there was probable cause for the arrest of the appellant. On February 8, 1974, Pat Dotson, a City of San Antonio police officer, talked to an informer on the street. This informer had given Dotson information from six to ten times, and as a result of that information he had obtained search warrants and made arrests. This informer told Dotson that Pablo Torres was at the La Monita De Ore Bar, where in about thirty minutes Torres was going to meet Tony De La O and that they were going to transfer a large amount of heroin. Detective Joe Saucedo, who was nearby in an undercover vehicle, was told by Dotson, with a "walkie-talkie," of the information he had received. Dotson then took a position across the street from the La Monita De Ore Bar. As a result of his surveillance he saw a red and black 1969 Oldsmobile park near the front of the bar. Within about a minute he saw a 1964 gold Ford driven by Tony De La O park behind the Oldsmobile. Dotson, who knew Tony De La O, and knew he dealt in narcotics, saw him approach the Oldsmobile on the driver's side. The Oldsmobile was then driven to another position nearby. The driver of the Oldsmobile was not known by Dotson. Tony De La O then parked his Ford in front of the La Monita De Ore Bar and went into the bar. In a short time, at about 5:00 p. m. he came out of the bar; he had in his right hand an object that looked like a brown package which he "nonchalantly placed" in the pocket of the leather coat he was wearing. Tony De La O then made a motion toward the driver of the Oldsmobile parked across the street. Tony De La O got into his Ford and drove away followed by the Oldsmobile. Officer Dotson, who was driving a Datsun pickup, followed them. Dotson remained in radio contact with Saucedo. Tony De La O drove the Ford to the 4600 block of Eldridge where he stopped; the Oldsmobile was stopped behind De La O's Ford. Dotson then observed Tony De La O leave the Ford, walk back to the driver's side of the Oldsmobile and hand the brown package through the window to the driver. De La O then returned to his Ford and drove away followed by the Oldsmobile. The automobiles were driven onto the expressway; both proceeded north on Interstate Highway 35 until they reached an access road. Both cars left the freeway and were in slow moving "bumper to bumper" traffic which stopped completely from time to time. Dotson, who was still in communication by radio with other officers, told them that he would arrest Tony De La O and directed the other officers to arrest the occupants of the Oldsmobile.

Saucedo and Sgt. Creed went to the Oldsmobile. The appellant was the driver; his wife was seated on the passenger side. Both the appellant and his wife were placed under arrest. Saucedo noticed the appellant look toward the console of the Oldsmobile and saw him make a motion with his right hand to grab a package. At this time Saucedo grabbed the package which was "alongside of the console." The brown paper package contained three sealed packets in which there was a brown substance later determined to be heroin. The informer's tip and the acts which Dotson saw that have been summarized were sufficient to show probable cause for the appellant's arrest and for a search of the Oldsmobile. See *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Kwant v. State,* 472 S.W.2d 781 (Tex.Cr.App.1971); *Almendarez v. State,* 460 S.W.2d 921 (Tex. Cr.App.1970); *Buitron v. State,* 519 S.W.2d 467 (Tex.Cr.App.1975); *Hull v. State,* 510 S.W.2d 358 (Tex.Cr.App.1974). The trial court did not err in admitting the heroin obtained incident to the lawful arrest.

The appellant insists that his confession was involuntarily given to the police and that it was erroneously admitted in evidence; he argues that the only logical inference which can be reached from the circumstantial evidence is that he gave the confession in return for his wife's release from police custody.

The appellant did not testify at the hearing on the motion to suppress the confession; the circumstances on which he relies are that within approximately one hour after he was arrested he made a written confession and within thirty minutes after he made the confession his wife was released from custody and given possession of his automobile.

A part of the testimony of Sgt. Creed, the officer to whom the confession was made, follows:

"Q. Did you discuss with him why he ought to give a statement to you?

"A. Not really. He wanted to give a statement, he said. We have him and his wife both down there, and they were both in the car. And we had them both down in the narcotics office and were preparing to put both of them in jail. And he said his wife didn't have anything to do with this incident.

"Q. And so then at that point you said, 'Tell me about what happened,' or something to that effect?

"A. He laid it out to me.

"Q. And you then, after you listened to what he had to say, you told him if he would give you this statement in writing, that that would clear his wife and that you would release her?

"A. No, sir, that wasn't the way it was put at all.

"Q. That's the way it happened, isn't it?

"A. Well, that's what subsequently happened, but I advised him that they were both under arrest for possession of heroin. And he proceeded to tell me his wife didn't have anything to do with it and that she had merely ridden down here from Austin. He said she didn't even know what his transaction down here was supposed to be, and he wanted to know what he could do about getting her out of this.

"I said it would be up to the Court, and he said—well, he said, 'Man, she doesn't know anything about it.' And I said, 'If she doesn't really know anything about it,' I said, 'Are you willing to make a statement to that effect?' And he said, 'Yes, I am.'

"And I said all right, and then I got the forms out and gave him a copy to read and let him read them, and then I went over it with him. And I got the typewriter and proceeded to reduce it to writing as he told it to me."

The Supreme Court of the United States in *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), applied to State prosecutions the rule announced for federal prosecutions in 1897 in *Bram v. United*

*States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, that a confession must be free and voluntary and it must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises however slight, nor by the exertion of any improper influence. See also *Shotwell Manufacturing Co. v. United States,* 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

■ A threat made by police officers to arrest or punish a close relative or a promise to free a relative of a prisoner in exchange for a confession may render the prisoner's subsequently made confession inadmissible in evidence. *People v. Steger,* 16 Cal.3d 539, 128 Cal.Rptr. 161, 546 P.2d 665 (1976). 80 A.L.R.2d 1428, 1438. However, where no express or implied promise or threat is made by the police, a prisoner's belief that his cooperation will benefit a relative will not render the prisoner's subsequent confession inadmissible in evidence. *People v. Steger,* supra. See 80 A.L.R.2d 1428, 1438.

Even when police have made a vague promise to see "what could be done" about freeing a prisoner's friends, it did not render a confession made subsequently inadmissible when the subject of leniency for the friends was introduced initially by the prisoner and not the police. *People v. Kendrick,* 56 Cal.2d 71, 14 Cal.Rptr. 13, 363 P.2d 13 (1961).

■ When a prisoner has created conditions which place an innocent relative under suspicion and the prisoner desires to extricate the relative from this position by making a confession and the confession is self-motivated, it may deem voluntary and admissible in evidence. *People v. Jackson,* 19 Cal.App.3d 95, 96 Cal.Rptr. 414 (1971). See also *McCutcheon v. State,* 159 Tex.Cr.R. 61, 261 S.W.2d 329 (1953); *Henson v. State,* 159 Tex.Cr.R. 647, 266 S.W.2d 864 (1954); *Coleman v. State,* 245 So.2d 642 (Fla.App.1971); *People v. Wormuth,* 35 A.D.2d 609, 312 N.Y. S.2d 28 (1970); *United States v. McShane,* 462 F.2d 5 (9 Cir., 1972); *United States v. Reese,* 351 F.Supp. 719 (Pa.D.C.1972); cf. *State v. Hilpipre,* 242 N.W.2d 306 (Ia.1976); *People v. Hogland,* 545 P.2d 721 (Colo.App. 1976).

■ When all of the circumstances presented in this case are considered we conclude they support the trial court's determination that the confession was made voluntarily and that it was admissible in evidence. The appellant had created the situation which placed his wife, who he said was not guilty of any wrong, under suspicion. He was a mature man who had prior felony convictions and experience with law enforcement officers and of being in custody. He made the confession within an hour after being arrested. He did not offer his or his wife's testimony, even on the motion to suppress. Creed was under a duty to determine whether or not there was evidence to hold or release the appellant's wife. A fair interpretation of Creed's testimony shows that it was not he, but that it was the appellant, who first said the appellant's wife was innocent and initially introduced the subject of leniency for his wife.

The trial court could well conclude that the statement was self-motivated and voluntarily made by the appellant because he wanted his innocent wife who was under suspicion freed and that the appellant's confession was not induced by promises direct or implied made by Creed. The trial court did not err in admitting the appellant's confession in evidence.

The judgment is affirmed.

Opinion approved by the Court.