Rodney Monroe HUNTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–03–00534–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 16, 2004.

Joseph Salhab, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE BROCK YATES, Justice.

A jury convicted appellant, Rodney Monroe Hunter, of murder and, after finding an enhancement paragraph to be true, sentenced him to seventy years' confinement in the Texas Department of Criminal Justice. In two points of error, appellant claims the trial court erred in admitting his confessions because they were given involuntarily and were taken in violation of his right to counsel. We affirm.

## BACKGROUND

On October 14, 2002, appellant was arrested in Senatobia, Mississippi for the murder of his live-in girlfriend, Veronica Colar, in Houston, Texas. Houston Police Officers Curtis Scales and Rick Moreno drove to Mississippi to speak with appellant. Early in the morning on October 15, the officers tape-recorded two interviews of appellant. In the first interview, appellant invoked his right to counsel. In the second, appellant waived his right to counsel and confessed to killing Colar in self-defense. Later, around ten o'clock in the morning, the officers tape-recorded a third interview in which appellant repeated his earlier confession.

## ANALYSIS

 In two points of error, appellant argues the trial court erred in admitting the second and third oral statements because they were obtained in violation of his right to counsel and were given involuntarily. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). Additionally, at a suppression hearing, the trial judge is the trier of fact and assesses the witnesses' credibility and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). As long as they are supported by the record, we afford almost total deference to a trial court's findings of historical fact. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Furthermore, we defer to a trial court's application of law to fact rulings if they turn on an evaluation of credibility and demeanor. *Id.*

Shortly after the first interview began, appellant invoked his right to counsel. After appellant invoked his right, the following exchange occurred:

Officer Moreno: To the best of your knowledge, when was the last time that you had sex with [the victim]?

Appellant: Seems like a Thursday or something.

Officer Scales: You don't have to talk with us anymore. We'll just take your DNA sample.

Officer Moreno: You understand ... that persons or person that was responsible for hiding you out here in Mississippi when you were wanted,

and people were advised that you were wanted, can be filed on for harboring a fugitive? You understand that?

The officers then turned the tape-recorder off. The trial court suppressed this first interview. Thus, the jury never heard the question regarding when appellant had last had sexual intercourse with the victim or appellant's answer to the question. However, the trial court did not exclude the second or third interviews, finding that appellant reinitiated conversation with the police and his confessions were voluntary.

### FIFTH AMENDMENT RIGHT TO COUNSEL

 Appellant contends the trial court's admission of the second and third interviews violated his right to counsel under the Fifth Amendment because he had invoked his right to counsel during the first interview.[1] Once an accused requests counsel, all interrogation by the police must cease until counsel is provided or until the accused reinitiates conversation. *Dinkins v. State*, 894 S.W.2d 330, 349 (Tex. Crim.App.1995). Statements obtained after the accused has invoked his right to counsel are admissible only if the court finds that the accused initiated the discussion and he knowingly and intelligently waived the rights he had invoked. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). The State has the burden of establishing a valid waiver. *Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim.App.1993). Here, appellant challenges the trial court's finding that he reinitiated conversation with the police.

1. In his first point of error, appellant claims his right to counsel under the Fifth and Sixth Amendments was violated. In his discussion regarding the Fifth Amendment challenge, appellant disputes the trial court's finding that he reinitiated conversation with the police. Appellant also argues that, even if we were to uphold the finding of reinitiation, the reinitiation was involuntary because Officer Moreno asked additional questions before any alleged reinitiation occurred. We will address this later challenge along with appellant's second point of error attacking the voluntariness of the confessions.

The officers testified that, after the tape-recorder was turned off, appellant did not respond to the comment about harboring a fugitive. The officers performed a buccal swab to obtain a DNA sample and talked with appellant about that procedure. The officers prepared to leave and knocked on the door of the cell in which they had been interviewing appellant. Officer Moreno said they knocked on the door two or three times but did not get an immediate response. While waiting for someone to open the door, appellant asked about the punishment range for a case of this nature. Officer Scales thought that someone had already opened the cell door before appellant asked the question. Regardless, both officers testified that appellant reinitiated the conversation. After being reminded he had asked for counsel, appellant said he wanted to waive his right to counsel, and the officers returned to the interview table. The tape-recorder was turned back on. One of the officers re-read appellant his *Miranda* rights. Appellant waived those rights on the tape and spoke with the officers about the murder. During the third interview, appellant again waived his rights and acknowledged that he had reinitiated conversation with the officers.

Appellant testified at the hearing on the motion to suppress and disputed much of the officers' testimony. Appellant claimed that he first requested an attorney before the tape was turned on but was told that there was no way they could find an attorney at that time in the morning. Appellant also said that the conversation never ended when the tape-recorder was turned off after the first interview. He claimed that the officers threatened to have his mother's parole revoked because she was

harboring him. Appellant admitted that he had understood his rights and knew he did not have to speak to the officers but did so anyway. He said he gave a statement only because of the threat against his mother.

Although the record contains conflicting evidence regarding whether appellant initiated further contact with the police, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). Moreover, the determination of whether an accused reinitiated conversation with the police depends on the particular facts and circumstances surrounding each case. *Muniz v. State*, 851 S.W.2d 238, 253 (Tex.Crim.App.1993). Thus, where, as here, the evidence is conflicting, we must defer to the factual findings of the trial court. *Ramirez v. State*, 76 S.W.3d 121, 125–26 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). Accordingly, we hold the trial court did not err in finding that appellant had reinitiated conversation with the police.

### VOLUNTARINESS

Appellant raises two challenges regarding the voluntariness of his confessions. First, appellant argues the confessions are tainted as a matter of law because Officer Moreno admittedly continued to speak with appellant after he had invoked his right to counsel. Second, appellant contends the confessions were the product of improper threats.

Appellant argues that Officer Moreno's continued questioning rendered any subsequent waiver of the right to counsel involuntary.[2] However, the Court

2. To support this contention, appellant relies on *United States v. Gomez*, 927 F.2d 1530 (11th Cir.1991). In *Gomez*, the court found

that, when an officer does not cease an interrogation upon a request of counsel, any statement later given by the accused is inadmissi-

of Criminal Appeals has determined that, although a violation of the right to counsel nullifies subsequent waivers given at police-initiated interviews, a violation does not nullify subsequent waivers given at accused-initiated interviews. *Herron v. State*, 86 S.W.3d 621, 628–29 (Tex.Crim. App.2002). The trial court found appellant had reinitiated conversation with the police, so we do not find the continued questioning rendered the statements involuntary as a matter of law.

However, appellant also contends that threats made by the officers to revoke his mother's parole coerced him into giving the confessions.[3] To support his claim, appellant relies upon (1) the comment made by Officer Moreno about harboring a fugitive and (2) additional threats he claims the officers made to him when the tape-recorder was turned off. Appellant points to the short lapse in time between Officer Moreno's comment and appellant's purported reinitiation of conversation as evidence of the direct coercive effect of the comment.

 The rule that requires interrogation to cease until counsel is provided or until the accused reinitiates conversation seeks to assure "that any statement made in a subsequent interrogation is not the result of coercive pressures." *Minnick v. Miss.*, 498 U.S. 146, 151–52, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Statements cannot be obtained by the influence of hope or fear applied by the police to the accused's

mind. *Creager v. State*, 952 S.W.2d 852, 856 (Tex.Crim.App.1997). Thus, a threat made by police officers to arrest or punish a close relative may render an accused's subsequently made confession inadmissible. *Roberts v. State*, 545 S.W.2d 157, 160 (Tex.Crim.App.1977). The ultimate question is whether the accused's will was overborne. *Ramirez*, 76 S.W.3d at 126.

In this case, appellant contends that, when the tape was turned off, the officers made specific threats to prosecute his mother and to revoke her parole. The officers testified that no such threats were made. In fact, the officers said they did not know the status of appellant's mother until they interviewed her later that same day. Because the trial court is the sole trier of fact and judge of the credibility of the witnesses, the trial court could choose to accept the testimony of the officers and disbelieve appellant's testimony. *Ross*, 32 S.W.3d at 855.

There was evidence that appellant was told after he had invoked his right to counsel that he did not have to answer any more of the officers' questions and that, after the comment about harboring a fugitive, the officers terminated the first interview. They took a buccal swab, prepared to leave, and attempted to leave the interview room. After appellant reinitiated conversation by asking about the punishment range for a case of this nature, both officers reminded appellant that he had invoked his right to counsel and did not

ble because, once the right to counsel had been violated, "no claim that the accused 'initiated' more conversation will be heard." *Id.* at 1538–39. The *Gomez* court conceded, however, that whether the coercive effect of the improper interrogation may have subsided depends on the facts of the case. *Id.* at 1539 n. 9. We disagree with the court's finding that the timing of the reinitiation is the prime factor to consider in evaluating the voluntariness of the reinitiation. Rather, the appropriate inquiry should evaluate the totali-

ty of the circumstances and determine whether the reinitiation was the product of coercive pressures. *See Ramirez*, 76 S.W.3d at 125.

3. Because he claims the statements were the product of improper threats, appellant argues the admission of the statements violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

return to the interview table until appellant said he wanted to waive the right to counsel and speak with the officers. Officer Moreno said it appeared that appellant understood his rights, and he was confident that appellant knowingly and intelligently waived those rights. In sum, although only a short time elapsed between the termination of the first interview and appellant's reinitiation, there was evidence that the officers had no intent to talk with appellant further about the murder or to create a coercive environment such that appellant was able to freely consider his options and rights.

Additionally, Officer Moreno testified that he did not make the comment about harboring a fugitive as a threat to obtain appellant's confession. Officer Moreno said he asked the question because he was unsure whether members of appellant's family had harbored him, and he was considering the possibility of discussing with a district attorney the filing of charges against appellant's father when he returned to Houston. There was a question as to whether appellant had talked with his father about what was going on. This was a concern because appellant's father may have mislead the police when they searched the father's house and lied about seeing appellant at the victim's funeral. Officer Moreno said he was trying to get the truth about whether appellant's father had lied to the police. In this context, there is evidence to support the trial court's finding that the comment was not an express or implied threat that, if appellant did not cooperate with the police, his family would be prosecuted. The trial court could have concluded that Officer Moreno was merely attempting to find out whether appellant's father had committed a crime.

In any event, appellant's activities placed his family members under suspicion, and appellant's desire to extricate the relatives does not render his self-motivated confessions involuntary. *Roberts,* 545 S.W.2d at 161. Where no threat is made by the police, an accused's belief that his cooperation will benefit a relative will not render his subsequent confession inadmissible. *Id.*

Appellant said he confessed only because the officers threatened to revoke his mother's parole. The trial court could have chosen, as the trier of fact, to believe the officers' testimony that no threat was made concerning appellant's mother. Moreover, we are not willing to say as a matter of law that the short lapse in time is dispositive as to whether appellant's reinitiation was voluntary. The issue of whether coercive pressures overbore appellant's will turns ultimately on the credibility and demeanor of the witnesses heard by the trial court. Thus, when all of the circumstances are considered, we conclude the trial court acted within its discretion in finding that the confessions were made voluntarily. We will not disturb the trial court's finding that appellant voluntarily reinitiated conversation with the police. *See Herron,* 86 S.W.3d at 629. Hence, the admission of the subsequent statements was not prohibited under the Fifth or Fourteenth Amendments.

### SIXTH AMENDMENT RIGHT TO COUNSEL

Appellant contends that the admission of the two subsequent interviews violated his right to counsel under the Sixth Amendment. "Unlike the Fifth Amendment right to counsel, the Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial proceedings against the defendant.'" *Green v. State,* 934 S.W.2d 92, 97 (Tex.Crim.App.1996) (quoting *United States v. Gouveia,* 467 U.S. 180, 187, 104

S.Ct. 2292, 81 L.Ed.2d 146 (1984)). However, the point at which adversary judicial proceedings begin is a matter of state law. *See Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex.Crim.App.1999). In this case, the State had filed a felony complaint against appellant before he was arrested. But, it is not entirely clear under Texas law whether the filing of a felony complaint is sufficient to trigger Sixth Amendment protections. *Compare Green v. State*, 872 S.W.2d 717, 720 (Tex.Crim.App.1994) (declining to hold that filing of felony complaint triggered Sixth Amendment protections but indicating such a result was "at least consistent with, if not dictated by," United States Supreme Court precedent), *with Barnhill v. State*, 657 S.W.2d 131, 132 (Tex.Crim.App. [Panel Op.] 1983) (finding Sixth Amendment right to counsel attached upon filing of felony complaint with magistrate).

▇▇▇▇ Assuming adversary judicial proceedings had begun, once the Sixth Amendment right attaches, "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the [right] applies." *Michigan v. Jackson*, 475 U.S. 625, 630, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The burden is then on the State to prove that the accused waived his Sixth Amendment right to counsel voluntarily, knowingly, and intelligently. *Robinson v. State*, 851 S.W.2d 216, 224 (Tex.Crim.App.1991). Waiver is shown as a matter of law with regard to pretrial questioning if an accused (1) who has not yet retained or been appointed counsel (2) decides voluntarily not to rely on his right to counsel and (3) decides so with the understanding that he could remain silent and request a lawyer and that the State could use any statement against him. *Id.* *Miranda* waivers may be sufficient to show the voluntary relinquishment required for waiver of the Sixth Amendment right to counsel. *Patterson v. Illinois*, 487 U.S. 285, 292–93, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).

Here, appellant had not yet retained or been appointed an attorney in connection with the murder charge. The trial court determined that appellant had reinitiated conversation with the police. The officers gave appellant his *Miranda* warnings during both the second and third interviews. The warnings informed appellant that he could remain silent and request an attorney and that, if he chose to give a statement, the statement could be used against him in a later proceeding. Appellant said he understood his rights and waived his right to counsel. Thus, the trial court did not err in finding that the admission of the statements was not barred by the Sixth Amendment.

We overrule appellant's two points of error and affirm the judgment of the trial court.