# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-03-00727-CR

**Anthony Wayne Brown, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR20666, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Anthony Wayne Brown guilty of possession of a controlled substance in an amount greater than four grams but less than two hundred grams with intent to deliver and sentenced him to fifty years' imprisonment. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). Brown challenges the trial court's failure to suppress his inculpatory written statement, the factual sufficiency of the evidence supporting his conviction, and the trial court's failure to submit the lesser included offense of possession to the jury. We affirm the conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 2002, Brown was returning home to Killeen from a trip to Houston in a borrowed car with his friend Jimmy Williams and his sixteen-year-old female cousin A.B. Williams was driving, Brown was in the front passenger seat, and A.B. was in the back seat.

Department of Public Safety Trooper Michael Nix stopped the car on the highway because it was missing a front license plate. Nix approached the passenger side of the car and tapped on the window to get Brown's attention. The trooper then identified himself and explained that he had stopped the car because of the absence of the front license plate. Nix soon discovered that Williams did not have a driver's license and that the vehicle registration had expired. As Nix asked Williams to step out of the car, he noticed the odor of marijuana and a green leafy substance on the console between the front seats.

While Nix and Williams were speaking, Nix observed Brown moving around inside the car. Later, Nix saw Brown moving his arms around and sinking down into his seat. Once another law enforcement officer arrived, Nix removed the two passengers and searched the car. He found an envelope with marijuana in it on the left-hand side of the front passenger seat and three cookies of crack cocaine inside a compartment in the console. Department of Public Safety chemist Scott Vajodos subsequently weighed and tested the cookies and verified that they consisted of 57.14 grams of crack cocaine. A small scale and rolling papers were also found in A.B.'s purse. The entire traffic stop and search was recorded on a videotape that was introduced into evidence and viewed by the jury.

Nix placed the three occupants of the car under arrest and read each their *Miranda* rights. None provided any explanation for the presence of the cocaine in the car, and all three were taken to jail. The following day, Brown appeared before a magistrate and was advised of the charges against him and his right to counsel. On September 25, 2002, the trial court appointed counsel for Brown.

2

Six months later Brown contacted jailer Carolyn Harris and asked her to notarize his signature on a document.[1]  The handwritten document stated:

> To whom it may concern this is [a] statement concerning any cocaine that was found inside the car that myself & Jimmy Williams & [A.B.] was driving did indeed belong to me Anthony Brown & no one else.

Harris read the statement and asked Brown if this was true and if signing the statement was really what he wanted to do.  He replied that the drugs were his and that "this is what I want to do."  He then signed the document, and Harris notarized his signature on March 14, 2003.

Trial commenced on November 12, and the jury convicted Brown the following day. The State then presented evidence of Brown's prior criminal history[2] and the jury reached a verdict recommending a sentence of fifty years' imprisonment.  Brown presented no witnesses at either phase of his trial.[3]

## DISCUSSION

In his first issue, Brown challenges the trial court's failure to suppress his inculpatory statement because it was the result of an illegal arrest.  Brown does not challenge the legality of the

---

[1]  Brown remained in the Milam County Jail for over a year pending trial.

[2]  The jury was aware of Brown's prior criminal history before reaching a guilty verdict. Brown's attorney inexplicably discussed his client's criminal history in opening and closing argument at the guilt or innocence phase of the trial.

[3]  The entire defense case at the guilt or innocence portion of the trial consisted of replaying approximately two minutes of the videotape of the stop.  It is not clear from the record what portion of the tape was played and Brown does not identify that portion on appeal.

3

search of the vehicle; rather he contends that, because no one in the car gave Trooper Nix any information regarding the drugs found during the search, Nix lacked the probable cause required to arrest him.

In reviewing a ruling on a motion to suppress, we give almost total deference to the trial court's determination of historical facts, and review *de novo* the court's application of search and seizure law that does not turn upon credibility and demeanor. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Hayes v. State*, 132 S.W.3d 147, 151 (Tex. App.—Austin 2004, no pet.). When the trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Balentine*, 71 S.W.3d at 768. We must affirm the trial court's ruling on a motion to suppress if it can be upheld on any valid theory of law applicable to the case—even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Romero v. State*, 800 S.W.2d 539, 543-544 (Tex. Crim. App. 1990).

A claim almost identical to Brown's was recently considered and rejected by the United States Supreme Court in *Maryland v. Pringle*. *See* 124 S.Ct. 795 (2003). In *Pringle*, Joseph Pringle and two other men traveling in a car were stopped by police and consented to a search of the car. *Pringle*, 124 S.Ct. at 798. When the police found cocaine between the armrest and the back seat of the car, they informed the men that if no one admitted ownership of the drugs, all three would be arrested. *Id*. The men did not provide any information regarding the drugs and all three were arrested. *Id*. Later that morning Pringle waived his *Miranda* rights and admitted to ownership of

4

the cocaine, and the police subsequently released the other two men. *Id.* Pringle moved to suppress his statement as the fruit of an illegal arrest. *Id.* at 799.

The Court held there was probable cause to arrest Pringle even though the police had no information specifically showing that Pringle himself had knowledge, dominion, or control of the drugs:

> We think it an entirely reasonable inference from these facts that any or all of the occupants had knowledge of, and exercised dominion and control over the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

*Id.* at 800-01. Similarly, when Trooper Nix discovered the cocaine in the console of the car Brown was traveling in, and none of the occupants provided any information regarding the drugs, there was probable cause to believe that Brown possessed the cocaine, either solely or jointly. *See id.* at 801 (without information singling out the guilty person, it is reasonable to infer a common enterprise among the occupants of a car). Because we find that Nix had probable cause to arrest Brown, his statement is not the fruit of an illegal arrest. We overrule his first issue.

In his second issue, Brown contends that his statement should have been suppressed on the grounds that it was not voluntarily given. In his brief Brown claims that Trooper Nix told him that all three passengers would be arrested unless one confessed. Brown claims that this warning improperly compelled him to confess ownership of the cocaine so that his young cousin and Williams would be released from jail. We have closely reviewed the record, including the videotape of the traffic stop, and find nothing to indicate that any officer ever said that all three occupants of

5

the car would be arrested unless one confessed. In fact, Brown's own testimony at a hearing on his motion to suppress the statement reflects that he was not coerced by the police:

> Why did you give the statement?
>
> A. Because I was under the assumption that it would go better if somebody cop[pe]d to the—what was filed.
>
> Q. It would go better for who?
>
> A. For everybody concerned, because they still had everybody locked up.

Brown testified only that he assumed things would go better if he made a statement; he did not discuss any communication between Nix or any other law enforcement officer that may have created that impression.

Brown's arrest was supported by probable cause. *See Pringle*, 124 S. Ct. at 801. His inculpatory statement was made six months after his arrest and was not the product of a custodial interrogation. He had previously been read his *Miranda* rights, appeared before a magistrate, and consulted with appointed counsel. Because the record does not support Brown's contention that his confession was the result of any coercive statement made by the police at the time of his arrest, we overrule his second issue. *See Colorado v. Connolly*, 479 U.S. 157, 167 (1986) (coercive police activity necessary predicate to finding confession involuntary under Due Process Clause); *Hunter v. State*, No. 14-03-0534-CR, 2004 Tex. App. LEXIS 8329, at *12 (Tex. App.—Houston [14th Dist.] September 16, 2004, no pet. h.) ("Where no threat is made by the police, an accused's belief that his cooperation will benefit a relative will not render his subsequent confession inadmissable.").

6

In his third and fourth issues, Brown challenges the factual sufficiency of the evidence supporting the jury's verdict (1) that he possessed a controlled substance, and (2) that he possessed it with the intent to deliver. When conducting a factual sufficiency review, we consider all the evidence including the testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or the contrary proof is so strong as to undermine confidence in the jury's determination of guilt beyond a reasonable doubt. *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004); *see Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). As in a legal sufficiency review, we must defer to the jury's determination of what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, an evaluation better suited for jurors who were in attendance when the testimony was delivered. *Johnson*, 23 S.W.3d at 8. It is the jury's prerogative to reject all or part of the evidence and draw reasonable inferences from the evidence presented. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

To prove possession of a controlled substance, the State must show that (1) the defendant exercised care, custody, control, or management over the substance, and (2) he knew the substance possessed was contraband. *See Martinets v. State*, 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.). The evidence need not exclude every reasonable hypothesis other than the defendant's guilt, but it must show facts and circumstances that demonstrate the defendant's knowledge and control of the contraband. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim.

7

App. 1995). When a defendant is not in exclusive control of contraband, the State must present facts and circumstances that affirmatively link the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband, as well as control over it. *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd). While affirmative links may be proven by circumstantial evidence, the proof must generate more than a strong suspicion or even a probability. *Id.*; *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

At trial, Brown presented an alternative theory that the cocaine actually belonged to his cousin A.B. He pointed to the fact that she had a scale and rolling papers in her purse and that her credibility was impeached through cross examination. However, the jury heard A.B.'s testimony and we defer to their evaluation of the witnesses's credibility. *See Johnson*, 23 S.W.3d at 8.

Furthermore, Brown was traveling in a car where 57.14 grams of cocaine was found hidden in a console between the seats. There was evidence that Brown was responsible for the car and had borrowed it from a friend. There was marijuana residue on the console next to Brown, and an envelope containing marijuana was found tucked beside the seat where he was sitting. Most importantly, Brown stated orally and in writing that the cocaine was his. Based on our review of all of the evidence, we cannot conclude that the proof of guilt was so obviously weak or the contrary proof so strong as to undermine confidence in the jury's determination that Brown possessed the cocaine. *See Zuniga*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20.

Brown next contends that the evidence is factually insufficient to support the jury's determination that he possessed the cocaine with the intent to deliver. At trial, Brown cited the absence of other indications that he intended to sell the cocaine and argued that there was an equal

probability that he purchased such a large quantity in order to stock up for his own personal use. In a possession with intent to deliver case, the "intent to deliver" element may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, and the presence of the accused in a drug house. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Avila v. State*, 15 S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The determination of the intent to deliver is an issue of fact for the jury, and it may be inferred from the acts, words, or conduct of the accused. *Taylor*, 106 S.W.3d at 831; *Avila*, 15 S.W.3d at 573. The control over the contraband need not be exclusive, but can be jointly exercised by more than one person. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *Taylor*, 106 S.W.3d at 831.

Here, Brown was transporting three cookies of freshly manufactured cocaine from Houston to Killeen. Veteran narcotics officer Ted Rechloff testified that each cookie would produce approximately 120 rocks of crack cocaine. He estimated that the largest quantity he had ever seen a cocaine user buy was six to eight rocks and that he had never seen a crack cocaine user keep a large supply of drugs on hand only for personal use. He also testified that if a person is found in possession of over fifty grams of cocaine and they are not also in possession of any drug use paraphanelia, he would believe that the cocaine was being purchased and transported for sale. Based on this record, we cannot conclude the evidence was factually insufficient to support the jury's finding that Brown intended to deliver a controlled substance. *See Zuniga*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20.

9

**Lesser Included Offense**

In his final issue, Brown contends that he was entitled to an instruction on the lesser included offense of possession of a controlled substance. We apply a two pronged test to determine if such an instruction must be given: (1) the lesser included offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). Possession is a lesser included offense of possession with intent to deliver, and therefore the first prong of the test is satisfied. *See Upchurch v. State*, 23 S.W.3d 536, 538 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Greer v. State*, 783 S.W.2d 222, 224 (Tex. App.—Dallas 1989, no pet.). The next question is whether there is some evidence in the record that Brown was only guilty of possession. *See Hampton*, 109 S.W.3d at 440. Anything more than a scintilla of evidence will entitle a defendant to an instruction. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). However, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the fact finder to consider before an instruction on a lesser included offense is warranted. *Bignal v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). If a defendant presents no evidence and there is no other evidence showing that he is guilty only of the lesser offense, a jury instruction is not required. *Id*.

Brown contends that because he only admitted to possession in his sworn statement, the jury was entitled to convict him of possession alone, and thus, he was entitled to a lesser included offense instruction. In his statement, Brown simply claims that the drugs belonged to him. He does

10

not comment on whether he intended to sell them or keep them for personal use. Although Brown argued at trial that he could have bought such a large quantity of cocaine to stock up for personal use, his written and oral statements provide no evidence to support this contention. We can find no other evidence in the record supporting such a theory. Just because the jury may have disbelieved the State's circumstantial evidence of intent to deliver does not alone entitle Brown to an instruction on the lesser included offense of possession. *See id.* at 24. We therefore overrule his fifth and final issue.

## CONCLUSION

Having overruled all of Brown's issues, we affirm the judgment of conviction.

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: November 12, 2004

Do Not Publish

11