

NUMBER 13-09-023-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

**GILBERTO TAMAYO VILLARREAL,**

**Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Gilberto Tamayo Villarreal, of capital murder. *See* TEX.

PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2009). Because the State did not seek the

death penalty, the trial court assessed punishment at life in prison. *See id*. § 12.31(a) (Vernon Supp. 2009). By two issues, appellant argues (1) the trial court erred in denying his request to make an opening statement, and (2) the jury could not have found beyond a reasonable doubt that his confession was voluntarily made. We affirm.

## I. BACKGROUND

Twenty-five-year-old Miguel Aguilar worked at a convenience store called "Gas Depot" in Edinburg, Texas. On April 22, 2007, he arrived at work in the afternoon and was supposed to close the store at 10:00 p.m. That evening, between 8:00 and 8:30, Lucita Leal stopped at the Gas Depot to make a purchase. While standing at the counter, she saw appellant and a male passenger drive up in a dark green Ford pickup. Appellant went into the store and walked by the counter. Leal testified that appellant "went back toward the back and then came back up toward the counter with nothing in his hands." She stated that his "eyes were scanning the store." When she left, appellant remained inside. As she walked out of the store, appellant's passenger "kept his head down." About 10:15 p.m., Kayleigh Garcia went inside the Gas Depot but did not see anyone inside. When Aguilar did not return home from work, his mother went to the Gas Depot and found him laying on the floor behind the counter. She went out to the street and yelled for help. Officer James Ramirez arrived at the scene and saw Aguilar lying on his left side. He had no pulse and was not breathing. The pathologist who performed Aguilar's autopsy[1] testified he died from "a gunshot would to the head."

---

[1]The State introduced the autopsy report into evidence as State's exhibit 68.

Officer Jose Garza testified that the Gas Depot's cash register was found on the floor next to Aguilar's feet. He stated the "cash register receipt" showed that the register was last opened at 9:58 p.m. on the night of the murder. The Gas Depot's owner told police that $104.48 was missing from the cash register.

On the day after the murder, Robert Alvarez, a detective with the Edinburg Police Department, retrieved video tape[2] from a security camera located at a motel across the street from the Gas Depot. During the State's case-in-chief, the jury watched the video tape while Detective Alvarez testified to what the video tape showed. He stated, in relevant part: "There is a truck there that just drove in. . . . [W]e believe . . . that this truck is the Defendant's truck that entered into the parking area of the Gas Depot. . . . [I]t does stay there approximately a minute, . . . but it exits out the back and heads down south. . . ." He stated that his investigation led to a suspect named J.D. Urbina, who provided him with a confession, implicating himself and appellant in Aguilar's murder. Afterwards, appellant was arrested in Georgia, and Detective Alvarez interviewed him twice after his arrest–once in Cartersville, Georgia, on May 22, 2007, and again in Edinburg, Texas, on May 23, 2007. Appellant did not confess during the first interview, but he did confess during the second interview. During the second interview, he provided Detective Alvarez with a written confession,[3] stating in relevant part:

> On April the 22nd 2007 I was at the crack house on South Closner with JD Urbina. I was smoking crack with him. There was a lot of other persons

---

[2]The State introduced the relevant portion of this video tape into evidence as State's exhibit 76.

[3]With respect to the second interview in Edinburg between appellant and Detective Alvarez, the State introduced: (1) the recording of this interview into evidence as State's exhibit 71; (2) a transcription of this interview into evidence as State's exhibit 74; and (3) a copy of appellant's written confession into evidence as State's exhibit 4.

there. We ran out of crack and JD said he could get some more money. JD told me he could jack some place for money. It was nighttime and JD told me to take him to the corner store. When we got there I saw JD pull out the gun and go inside the store. JD shot the clerk and we went back to the house. I don't know how much money he got. JD bought some more crack and we smoked it. I left the house before the police got there. This was an accident. Nobody was supposed to die. We just needed more money for crack. . . .

Appellant did not testify as a witness in his defense.

## II. DISCUSSION

### A. Opening Statement

In his first issue, appellant contends that the trial court erred in denying his request to make an opening statement to the jury before the State presented its evidence to the jury, despite the State having waived its opening statement. The court of criminal appeals has determined that criminal defendants do not have the right to make an opening statement prior to the presentation of the State's case when the State waives its opening statement. *Moore v. State*, 868 S.W.2d 787, 790-91 (Tex. Crim. App. 1993). When the State waives its opening statement, the criminal defendant may make his or her opening statement at the close of the State's case-in-chief. *Id*. at 791; *Carlock v. State*, 99 S.W.3d 288, 291 (Tex. App.–Texarkana 2003, no pet.).

Appellant argues that the State's reading of the indictment to the jury constitutes the equivalent of an opening statement. However, "the reading of an indictment does not constitute an opening statement by the state." *Carlock*, 99 S.W.3d at 291. Thus, the trial court did not err in failing to allow appellant to make an opening statement in light of the State's waiver. Issue one is overruled.

4

**B. Voluntariness of Confession**

In his second issue, appellant contends that trickery and deception used by the police to obtain his confession violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and, thus, no rational trier of fact could have found beyond a reasonable doubt that his confession, taking into consideration the totality of the circumstances, was voluntarily made.[4] The charge instructed[5] the jury with respect to the issue of voluntariness of the confession, and the jury returned a general verdict of guilty.

An accused may claim his statement was not freely and voluntarily made and thus inadmissible as a violation of the Due Process Clause. *Oursbourn v. State*, 259 S.W.3d 159, 169, 170 (Tex. Crim. App. 2008). The Due Process Clause incorporates the Fifth Amendment's Self-Incrimination Clause. *Malloy v. Hogan*, 378 U.S. 1, 6-11 (1964). "A confession may be involuntary under the Due Process Clause only when there is police overreaching." *Oursbourn*, 259 S.W.3d at 169; *see Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (holding that if there is no police coercion or overreaching, no due-process

---

[4]Appellant limited his argument to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He does not assert a claim under the Texas Constitution or Texas statutory law. Therefore, we do not conduct a separate analysis required to determine whether the police conduct in this case constituted improper inducements under state law. *See Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex. Crim. App. 1993) (requiring state and federal involuntariness claims to be argued on separate grounds with separate substantive analysis or argument provided for each ground). However, we note that a statement that is involuntary as a matter of federal constitutional law is also involuntary under article 38.22 of the Texas Code of Criminal Procedure, which governs the admissibility of confessions. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).

[5]The charge included an instruction on the voluntariness of the confession as follows:

> You are instructed unless you believe from the evidence beyond a reasonable doubt that the alleged confession or statement introduced into evidence was freely and voluntarily made by the Defendant without compulsion or persuasion, or if you have a reasonable doubt thereof, you shall not consider such alleged statement or confession for any purpose nor any evidence obtained as a result thereof.

violation exists). "The Due Process Clause is aimed at protecting suspects from police overreaching, . . . [and] [t]he same is true for *Miranda*[6] rights and waivers that apply to custodial-interrogation statements." *Id*. "'*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.'" *Id*. (quoting *Connelly*, 479 U.S. at 170).

"Substantive constitutional law prohibits the government from using an involuntary confession against an accused with the test for voluntariness being whether the confession is the product 'of an essentially free and unconstrained choice by its maker.'" *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (stating that accused's statement is involuntary "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker"). The "inquiry . . . examines 'whether a defendant's will was overborne' by the circumstances surrounding the giving of the confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth*, 412 U.S. at 226). "The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Id*. (quoting *Schneckloth*, 412 U.S. at 226). "The determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" *Id*. (quoting *Stein v. New York*, 346 U.S. 156, 185 (1953)).

---

[6]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

In *Oursbourn*, the court of criminal appeals noted that, in *Colorado v. Connelly*, the United States Supreme Court collected cases in which courts found statements involuntary under *Miranda* or the Due Process Clause. *Oursbourn*, 259 S.W.3d at 170. These cases involve police overreaching and involve fact scenarios such as: (1) "the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit"; (2) "the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep"; (3) "the police officers held a gun to the head of the wounded suspect to extract a confession"; (4) "the police interrogated the subject intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food"; (5) "the suspect was held for four days with inadequate food and medical attention until he confessed"; (6) "the suspect was subjected to five days of repeated questioning during which police employed coercive tactics"; (7) "the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail"; and (8) "the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep." *Id*. at 170-71. Based upon these fact scenarios, the *Oursbourn* court stated that "due-process and *Miranda* claims of involuntariness generally do not require 'sweeping inquiries into the state of mind of a criminal defendant who has confessed'"[7][;] rather, "[t]hey involve an objective assessment of police behavior." *Id*. at 171.

---

[7]*Oursbourn*, 259 S.W.3d at 171 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

Here, the evidence showed that: (1) Detective Alvarez gave appellant his *Miranda* warnings prior to each interview, before each interview started, and appellant stated that he understood these warnings and that he agreed to waive them; (2) appellant's interview in Georgia lasted about one hour and six minutes and occurred at the Cartersville, Georgia airport; (3) his interview in Edinburg lasted about one hour and occurred in Detective Alvarez's office; (4) appellant never requested an attorney and never requested to terminate either interview; (5) appellant was not denied access to relatives, food, water, or use of the restroom; (6) no officer either used or threatened to use physical brutality against him during either interview; (7) appellant does not claim, and the record does not show, that he was mentally unstable, physically ill, or intoxicated at the time of either interview; (8) appellant was thirty-five years old at the time of the interviews; and (10) appellant was released from prison in 2005.

Nevertheless, appellant contends that his confession was involuntary because (1) Detective Alvarez told him that the police had evidence connecting him to the murder that, in fact, did not exist, and (2) the police threatened to arrest his family members. We address each argument separately.

**1. Misrepresentations About The Evidence**

Detective Alvarez testified that prior to appellant's Georgia interview, the evidence linking appellant to the murder was: (1) Urbina's confession, implicating appellant in the murder; (2) Leal's identification of appellant at the Gas Depot on the evening of the murder; (3) the video from the motel security camera, showing a pickup outside the Gas Depot at the time of the murder; and (4) appellant owned a pickup. The police did not have any physical, scientific, or photographic evidence linking appellant to the murder. During the

8

Georgia interview on May 22, 2007, Detective Alvarez told appellant the "evidence is overwhelming" and that: (1) the video tape showed his pickup in front of the Gas Depot at the time of the murder; (2) the video tape showed a person wearing glasses[8] walking into the Gas Depot at the time of the murder; (3) that this person appeared to be appellant; and (4) that DNA on a gun and/or gun case could possibly link him to the murder. Detective Alvarez testified this evidence did not exist and that he misrepresented the evidence to appellant in an attempt to obtain the truth from him. During the Edinburg interview on May 23, 2007, Detective Alvarez told appellant, "We presented evidence to you yesterday [referring to the Georgia interview], though we told you what we had or whatever."

"Misrepresentations made by the police to a suspect during an interrogation [are] a relevant factor in assessing whether the suspect's confession was voluntary, but it is insufficient to render an otherwise voluntary confession inadmissible." *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). We view the misrepresentations in the context of the totality of the circumstances. *Id*. "Some types of police deception employed during custodial interrogation, designed to elicit a confession from the accused, are constitutionally permissible." *Id*. The focus is on whether the behavior of the officers "was such as to overbear the will of the accused and bring about a confession not freely determined." *Id*. at 99-100 (citing *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)).

"Of the numerous types of police deception, a misrepresentation relating to an accused's connection to the crime is the least likely to render a confession involuntary."

---

[8]The record showed that appellant wore glasses.

9

*Id*. at 100. In *Oursbourn*, the court of criminal appeals noted that even though an officer lied to the accused about witnesses having identified him in a photo spread, the court stated, "it is well established that lying about the state of the evidence is not the sort of 'overreaching' that implicates the Due Process Clause, as long as the subterfuge used is not one likely to produce an untrue statement." *Oursbourn*, 259 S.W.3d at 182. Recently, the court of criminal appeals stated that "verbal trickery, deception and outright lies concerning the existence of evidence are acceptable interrogation strategies, but not the use of false, incriminating documents." *Wilson v. State*, No. PD-0307-09, 2010 WL 715253, at *4 (Tex. Crim. App. March 3, 2010) (internal quotation marks omitted).

Appellant has provided no argument concerning how the misrepresentations about the existence of evidence were "such as to overbear" his will "and bring about a confession not freely determined." *Green*, 934 S.W.2d at 99-100. He does not argue, and the record does not show, that any officer presented false, incriminating documents to him. The complained-of misrepresentations relate to his "connection to the crime," and are, therefore, the least likely to render his confession involuntary. *See id*. (stating that an interrogating officer's misrepresentation to accused that there was an eyewitness to the murder "was not of the type that would undermine the reliability of the confession, and it was not so coercive that it would overbear [the accused's] will and render his confession involuntary."); *Weaver v. State*, 265 S.W.3d 523, 534-35 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd) (deciding that officers' misrepresentations, during the accused's interrogation, that "(1) witnesses saw him commit the crime, (2) his fingerprints were found, and (3) a videotape showed his involvement in the crime," did not make the accused's

10

statement involuntary).  We conclude that Detective Alvarez's misrepresentations did not overbear appellant's will such that his confession was not the product of an essentially free and unconstrained choice.

### 2. Threats To Arrest Family Members

Appellant argues that during the Georgia interview, Detective Alvarez and two other officers who were present at the interview threatened to arrest his mother, mother-in-law, and his pregnant girlfriend.[9]  In *Roberts v. State*, the court of criminal appeals stated that

---

[9]After the State rested, the defense called Detective Alvarez as a witness and played the video recording of the Georgia interview to the jury.  Defense counsel stopped and started the recording as necessary in order to question Detective Alvarez about certain verbal exchanges between appellant and the officers.  Appellant directs our attention to the following excerpts from that interview, where Detective Alvarez is interrogating appellant:

> Your mom's involved, too. You made phone calls to your home. We went and asked them.  We were conducting and [sic] investigation murder. We went and asked if them if they heard from you and lied to us.

> * * * *

> Okay.  See your girlfriend, your pregnant wife, your common-law wife, whatever she is, is facing some serious time.

> * * * *

> She helped you run from us.  You knew about the [appellant's] warrant.  She knew about the warrant. . . .

> * * * *

> I know you went to the house and left a number so you could call.

> * * * *

She lied, claiming not to know anything about where you were and the phone numbers.  But we'll get to her later.  In the meantime, your baby's going to be born when your girlfriend is in prison.

> We will charge her.  That's not a choice we will have.  Whether we can help her or not depends on how truthful you're willing to be about this.

> * * * *

> She wants to run from the law with baby, we'll fly and pick her up where ever she

11

"[a] threat made by police officers to arrest or punish a close relative or a promise to free a relative of a prisoner in exchange for a confession may render the prisoner's subsequently made confession inadmissible in evidence." 545 S.W.2d 157, 161 (Tex. Crim. App. 1977). "When a prisoner has created conditions which place an innocent relative under suspicion and the prisoner desires to extricate the relative from this position by making a confession and the confession is self-motivated, it may deem voluntary and admissible in evidence." *Id*. "The ultimate question is whether the accused's will was overborne." *Hunter v. State*, 148 S.W.3d 526, 531 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd).

---

goes.

&ast; &ast; &ast; &ast;

We don't want anyway [to] mess with those people man. We don't want anyway [to] mess with your wife. We don't want to mess with your mom. We want you to be honest and say: You know what, this ends with me. This what [sic] happened. It should have never gone that way. Oh, well, that's how it happened.

Or else we're gonna have to pick up your mom. Take responsibility. Or—

&ast; &ast; &ast; &ast;

Or else we're gonna have to pick up your mom, your wife with a pregnant baby. . . .

Later during the Georgia interview, an interrogator asked appellant for his wife's name. Appellant told him his wife's name and said that he and his wife drove to Georgia in a jeep, which belonged to his mother-in-law. Then, the interrogator asked appellant:

You want the guys back in Edinburg go get warrants for all these people and round them up? You want them to hold off? We've already got all their information, photographs, and address, correct?

&ast; &ast; &ast; &ast;

Okay. We just need their addresses to make sure and ID her we get the warrant and all of this stuff.

12

Appellant has provided no argument concerning how the threats to arrest his family members made by the officers caused his will to be overborne. He maintained his innocence throughout the first interview in Georgia and did not confess until the second interview, which occurred the next day in Edinburg, Texas. All of the threats to arrest his family members were made during the first interview. Thus, appellant has not established a causal link between his confession and the threats. *See Oursbourn*, 259 S.W.3d at 170 (stating that "[a]bsent police misconduct causally related to the confession, there is 'simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.'") (quoting *Connelly*, 479 U.S. at 164).[10] Furthermore, the record does not show that Detective Alvarez or any other officer obtained the confession as a result of any promise made to appellant, or that appellant confessed out of concern the police would arrest his family members if he did not confess.

---

[10]*See also Penaflor v. State*, Nos. 14-05-00569, 14-05-00570-CR, 2006 WL 3360550 (Tex. App.–Houston [14th Dist.[ 2006, pet. ref'd) (mem. op., not designated for publication). In that case, officers interviewed Penaflor twice after his arrest. *Id*. at *1. Penaflor did not confess during the first interview, but he did confess during the second interview. *Id*. He filed a motion to suppress his confession, which the trial court denied. *Id*. at *2. On appeal, he argued that the trial court erred in denying the suppression motion because his confession was induced by direct or indirect promises in violation of the Fifth Amendment to the United States Constitution. *Id*. The court held that the confession was given voluntarily. *Id*. at *5. In determining whether a causal link existed between the promises and the confession, the court noted that Penaflor maintained his innocence throughout the first interview and did not confess until during the second interview. *Id*. at *4. All of the alleged promises were made during the first interview; none were made during the second interview. *Id*. at **4-5. As a result, the court concluded no causal relationship existed between the promises and the confession. *Id*.

We note that appellant had served time in prison and was released in 2005. Prior experience with the criminal-justice system weighs in favor of finding his confession voluntary. *See Green*, 934 S.W.2d at 100. Another consideration supporting the voluntariness of his confession is that he received the *Miranda* warnings and waived these rights prior to each interview. *See id*. We conclude that the circumstances surrounding appellant's confession were not so coercive to have overborne his free will. Viewing the totality of the circumstances, we hold that a rational jury could have found from the evidence beyond a reasonable doubt that appellant's confession was freely and voluntarily made without compulsion or persuasion in compliance with the Due Process Clause. Issue two is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of June, 2010.