

## NUMBER 13-08-00731-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**ABRAHAM MAR,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                             **Appellee.**

---

### On appeal from the 357th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

Appellant, Abraham Mar, appeals his conviction for attempted capital murder for

shooting a police officer.[1]  *See* TEX. PENAL CODE ANN. §§ 19.03 (Vernon Supp. 2009),

---

[1] Mar was also convicted of evading arrest and was sentenced to two years' imprisonment in a state jail facility and fined $10,000.  *See* TEX. PENAL CODE ANN. § 38.04 (Vernon Supp. 2009).  He does not challenge that conviction in this appeal.

15.01 (Vernon 2003). Mar filed a pre-trial motion to suppress a confession he gave to the police, which the trial court denied. Mar then pleaded guilty. The jury assessed his punishment at ninety-nine years' imprisonment in the Texas Department of Criminal Justice's Institutional Division and a fine of $10,000.

By three issues, Mar challenges the trial court's ruling on the pre-trial motion to suppress, arguing that: (1) the trial court should have suppressed his confession because he did not understand his rights and because the police officers continued interrogating him after he validly invoked his right to counsel; (2) his confession was involuntary because the police made promises to him to induce the confession; and (3) the trial court failed to make findings as to the voluntariness of his confession. We affirm.

## I. BACKGROUND

On June 25, 2008, a Cameron County grand jury indicted Mar for attempted capital murder, alleging that Mar shot Carlos Diaz, a Harlingen Police Officer. Mar was apprehended in Matamoros, Mexico and was delivered to law enforcement authorities in the United States. Mar was then interrogated by Texas Ranger Rolando Castañeda and Sergeant Miriam Anderson of the Harlingen Police Department. The interrogation was videotaped.

Mar filed a motion to suppress the resulting confession. Mar alleged that his confession was obtained in violation of Texas Code of Criminal Procedure article 38.23; the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and Article I, Section 9 of the Texas Constitution. *See* U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, §§ 9, 10, 19; TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon

2005). On November 3, 2008, the trial court held a hearing on Mar's motion.

During the hearing, the trial court indicated on the record that it had reviewed the videotaped confession. The video is over an hour long. At the beginning of the interview, Sergeant Anderson referred to Mar as "mijo" and states to Mar, "You know me." She read Mar his *Miranda* rights, asked him if he understood them, and had him sign and initial a waiver of rights. Mar indicated that he had no questions.

Initially, Mar told the officers that he had children. Sergeant Anderson reminded Mar that she had known him for a long time and knew his mother, and she repeatedly referred to him as "mijo" throughout the video. Mar denied knowledge of the shooting. Sergeant Anderson stated that they "were not here to find out what happened," because she claimed that they already knew what happened. She told Mar that she was there to get his side of the story, to find out *why* "it happened," and to help Mar help himself. Mar denied knowing what she was talking about and claimed he had been in Matamoros, Mexico.

Ranger Castañeda then told Mar that the police knew he was the shooter because there was a video from the crime scene. Mar asked if the officers would turn off the video of the interview and stated he would talk to them off camera, but the officers refused. Ranger Castañeda then said:

> By you telling us what happened it's gonna help your case because you wanna see your children . . . . Instead of getting life in prison, you might—you'll get less. I'm not promising anything, number one, I'm not promising anything. But your cooperation means a lot to the District Attorney's office. And me personally, I will contact the District Attorney's office and tell them that you cooperated with us. And the only way that I can tell him that you cooperated—cooperated with us, is he has to see what you said. We're trying to help you Abraham. . . .

Sergeant Anderson explained again that the officers wanted to get Mar's side of

3

the story.   Mar asked Sergeant Anderson to explain the allegations to him.   Sergeant Anderson told Mar that a police car camera captured Mar exiting his vehicle and grabbing a weapon.   She then said that the video showed Mar firing the weapon at the police car, injuring a police officer.

Ranger Castañeda told Mar that he was being charged with attempted capital murder, which carried a term of imprisonment of five to ninety-nine years.   Mar then asked what he could do to avoid getting ninety-nine years.   Ranger Castañeda answered:   "Where it will help you not get ninety-nine years—The District Attorney's office, as a matter of fact, they already called me.   They want to know if you cooperated.   Your cooperation—first of all, I can't promise you anything, you gotta make that perfectly clear."   Mar replied, "Yeah, I know."   Ranger Castañeda continued:

> But your cooperation will help you reduce that sentence to the point that you might see your little girl and your little boy when they're teenagers or twenty years old or something.   But at least you don't have to worry about seeing them whey they're fifty, sixty, seventy, eighty years old. . . .   If I pick up the phone and tell the District Attorney's office and that Mar did not cooperate, what do you think is going to happen?   Do you think—we're going to show that videotape to the jury. . . .

Mar continued to deny that he was the shooter.   He claimed that he had been arrested on several occasions, but he stated that no charges were ever brought.   He opined that he was always being blamed for things he did not do.   Mar referred to himself as a "victim."   He asked why, if the police had enough evidence to convict him, did they need a confession?   Ranger Castañeda then asked if Mar wanted to spend ninety-nine years in prison and stated that he did not want Mar to do that much time.   Ranger Castañeda stated that if Mar went to prison, his children would grow up being raised by their mother as a single parent.   He stated he was just trying to keep Mar from

4

spending ninety-nine years in prison.

Again, Mar explained that he was always a target of police investigations that were unfounded. He gave detailed examples of times he believed he was the victim of police harassment. Ranger Castañeda then said that he felt disrespected because the videotape showed Mar committing the crime, but he would not admit to it. He stated that the officers did not need to talk to Mar—they had enough evidence. But he explained that at trial, when he was asked if Mar cooperated, he would tell the jury that he gave Mar the chance to tell his side of the story, and Mar lied instead of cooperating.

Later in the video, after more discussion by Mar of how he had been harassed by the police, the following exchange occurred:

| Ranger Castañeda: | The bottom line. Look, I understand what you're saying, but the bottom line is, there's a good possibility you could go to prison for the rest of your life if you don't cooperate. . . . Abraham, you are not listening at all. You are not listening. Listen to me. Listen to me. Cut the crap about being the victim. You shot that officer. We got you on video. You shot that weapon. We got your license plate on the car on the video. We got the store video doing the same—showing the same thing. So cut the crap about being a victim. You're not a victim on this one. You might have been a victim of the other ones. But on this one where I'm involved, she's involved, you are a—you're not a victim. You shot that officer. We wanna know why you shot the officer. And if you don't wanna tell us, we'll make sure we tell the District Attorney to go ahead and go all the way for ninety-nine years. Because I guarantee you, you wanna get your high-powered attorney, get him. All we have to do is show that videotape to the jury, and you are gone. You'll never see your children again. |
|---|---|

5

| | |
|---|---|
| Mar: | I don't even have money to get an attorney. |
| Sergeant Anderson: | Be smart. |
| Ranger Castañeda: | You will never see your children again if you keep on saying that you're a victim. You might have been a victim on the other ones. I don't know. And it sounds like you might have been. But the one case that I'm concerned about is this one. You were not the victim. You pulled that trigger and shot that officer. You're lucky that officer isn't dead because if that officer had been dead, and with that video, in eight to ten years you'd be executed by lethal injection in the state of Texas. And I've seen people being executed before, and it ain't pretty. So here is your opportunity to see your—at least see your children when you're old enough to—that you're not that old that you can still walk and still play or see your grandchildren. You make that decision. But you have got to understand something right now. Look at me. You have got to understand something now. We don't need you to tell us anything. If you wanna go to prison for ninety-nine years, go. We're gonna get you because that video—not because she said it or I said it. That video says everything. |

Mar began talking about how he grew up in a bad neighborhood and explained that he was abused as a child. He again claimed that he had been harassed by the police and repeatedly accused of crimes, but the charges were later dropped. Sergeant Anderson then stated again that this was Mar's "chance" to do something for his children and to "see them grow up."

Mar then asked to talk to the prosecutor to find out what amount of prison time he was facing and said he would "talk" after that. He stated he wanted to talk to the prosecutor to get an assurance about what would happen to him. Sergeant Anderson asked how Mar felt, and he stated he felt "dead." He stated again that he wanted to talk

6

to the district attorney or the judge, and he did not "want to spend any more time with the questioning," and the games and reverse psychology. Sergeant Anderson said that they were not playing mental games but were trying to give him a chance to tell what happened. Mar then stated he understood the police believed they had evidence against him, but he wanted to hear what the district attorney had to say. When asked what he would say to the prosecutor, Mar said he would "lace him up on what happened." The following exchange then occurred:

| | |
|---|---|
| Ranger Castañeda: | If I call the DA right now and say, Mr. DA, Abraham Mar says he'll be up front with us, tell us exactly what happened, but he needs to know how much time he's looking at. And you'll talk with us. |
| Mar: | Fuck yes. . . . And you're making a promise on that thing because . . . the DA's gonna say how much time I'm gonna get on that, and you know that's against the law to make a promise. |
| Ranger Castañeda: | No. I can't make a promise. The DA can make a promise. |
| Mar: | What the DA decides to do, I guess I'll talk whatever. I'll say I'm not guilty or I'm guilty. I just wanna talk to the DA. |
| Ranger Castañeda: | Ok. If we don't bring the DA over here, you're not gonna talk to us. That's fine with me. . . . That's fine with me. You'll go to prison for ninety-nine years. So don't be trying to negotiate with me. Because I don't negotiate. Either you're going to go to prison for ninety-nine years, or you have the opportunity to go to prison for twenty or thirty years. Twenty-five, thirty, forty years. With good time you could be out in about twenty-five years. Your children will be twenty-five years old. . . . And I could call the District Attorney's office, and he's not gonna say well, uh, if he talks to us, I'll offer him twenty-five years, thirty |

7

|                      | years.                                                                                                                                                                                                                                                                                                                                                 |
| -------------------- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| Sergeant Anderson:   | It doesn't work like that mijo.                                                                                                                                                                                                                                                                                                                         |
| Ranger Castañeda:    | It doesn't work that way.   This is not law and order.                                                                                                                                                                                                                                                                                                  |
| Mar:                 | Well I don't know.   You're making it seem like law and order.                                                                                                                                                                                                                                                                                          |
| Ranger Castañeda:    | This is not law and order. . . . The good thing about this case, well the great thing about this case, is you're busted.   You're busted bad.   I never had a case where—you have been busted with a video camera. . . . If you tell us I shot that car and the reason I shot that car is because of this, I can almost tell you you're not gonna serve ninety-nine years in prison. |
| Mar:                 | But I'm gonna serve eighty-seven.                                                                                                                                                                                                                                                                                                                       |
| Ranger Castañeda:    | You're not gonna serve eighty-seven years in prison, because I'm gonna go, as a Texas Ranger, and she's gonna go as a Harlingen police sergeant, and say Mar cooperated with us.   He deserves a lower sentence than ninety-nine years.   But, we're not gonna negotiate.                                                                                   |

Mar then again referred to his prior arrests and alleged police harassment, and he asked Sergeant Anderson to include his arrest history in his file.   The following exchange occurred about whether Mar could speak to an attorney:

| Mar:                 | Alright, is there an attorney around right now?                                                                          |
| -------------------- | ----------------------------------------------------------------------------------------------------------------------- |
| Sergeant Anderson:   | Not in here.                                                                                                             |
| Mar:                 | Well could I just talk to an attorney real quick?                                                                        |
| Sergeant Anderson:   | You want to talk to an attorney?                                                                                         |
| Mar:                 | Real quick, just real quick, and boom, after that, vamonos.   I'll tell ya'll everything ya'lll wanna know.   I just wanna talk to an attorney real |

8

quick and after that I'll tell ya'll whatever you wanna know.

At this point, Sergeant Anderson reached under the table and began packing up her things. She muttered, "Ay mijo. Ok." Ranger Castañeda immediately said, "You do have a right to an attorney; You're gonna get that right to an attorney." Mar interrupted Ranger Castañeda and began talking again, crying as he spoke. Mar began explaining his background and told the officers that he had psychiatric problems. He said he felt like the police had been bullying him, and he asked Ranger Castañeda how it would make him feel. Ranger Castañeda stated it would make him angry, and asked, "And then what happened?" Mar claimed that he "blacked out." Mar stated that he was "going to do the right thing," and he got on his knees in front of Sergeant Anderson. He said he had already lost his pride, and he stated that the police officer, although he did not identify who, had arrested him on prior occasions. Mar stated he knew he was going to prison, and Ranger Castañeda asked if he wanted to go to prison for ninety-nine years, and stated that Mar's cooperation would help him. Sergeant Anderson stated that Mar was "doing the right thing." Mar indicated that he merely wanted a lesser sentence.

Mar stated he believed the officer had pulled him over on purpose and was trying to harass him. He said he blacked out, and he didn't know what happened. Ranger Castañeda stated that a black out was not going to help Mar. He told Mar that this case was different than others because there was a videotape, which would be shown to the jury. Ranger Castañeda then stated again, "The DA's gonna get life. Do you wanna get life? Or do you wanna get twenty-five, thirty years? We're trying to help you." Mar then asked to use the phone. Ranger Castañeda stated that if Mar told them what

9

happened, he could use the phone and have a cigarette. Mar then confessed to shooting the police officer.

At the hearing on the motion to suppress, the defense called Ranger Castañeda as its first witness. Ranger Castañeda testified that he interviewed Mar on June 26, 2008. The defense asked whether Ranger Castañeda informed Mar that his cooperation would help him get a certain punishment in the case, and the following exchange occurred:

| [Defense Counsel]: | Okay. Now, as the interview progressed, did you inform Mr. Mar that his cooperation in the interview would help him get a certain punishment in his particular case in which you were questioning him? |
|---|---|
| [Ranger Castañeda]: | What I did advise him that—I'm not in the position to negotiate or to promise him anything. I said that his cooperation could or possibly help him in the future, but I am not in the position to be making any deals with him. I'm not an attorney. |
| [Defense Counsel]: | Isn't it true that you told him that you were going to specifically speak to the District Attorney's Office and that he would not get 99 years, that he would get less; isn't that true? |
| [Ranger Castañeda]: | I—I did advise him that, but I was utilizing deception as an investigative tool at that point; and yes, I did tell him that. |
| [Defense Counsel]: | And, in fact, that—you told him that several times; isn't that correct? |
| [Ranger Castañeda]: | Probably. |
| . . . . | |
| [Defense Counsel]: | Ranger Castañeda, the reason—the reason behind your telling Abraham Mar that he would get a lesser sentence was, the purpose of that |

was to elicit further testimony; isn't that true?

[Ranger Castañeda]: If you viewed the whole tape, I talked to him about that I'm not in the position to be negotiating with him, that I didn't need his testimony, just on the videotape of the shooting and other evidence, that I didn't need him; but I was giving him an opportunity to hear his side of the story.

[Defense Counsel]: Well, Ranger Castañeda, I know that here you assert that you didn't need him and that you had a video and what not, but your actions, your words to him were such that you were telling him that he would get a lesser sentence, which flies in the face of your assertion now that you weren't negotiating with him; isn't that true?

[Ranger Castañeda]: I wasn't negotiating with him.   I was not.

[Defense Counsel]: Then explain to this Court why you were consistent and persistent on telling him that he would receive a lesser sentence.

[Ranger Castañeda]: Like I told you before, I was using deception as an investigative tool during my interview.   I'm not in a position to be negotiating with the district attorney.   I'm not an attorney.

[Defense Counsel]: Well, you did make those assertions; didn't you?

[Ranger Castañeda]: And if you remember in the beginning of the tape I said, "I cannot promise you anything.   I could make the recommendations to the District Attorney's Office."

[Defense Counsel]: But isn't it true, Ranger Castañeda, that everything else that you directed at Mr. Abraham Mar was consistent with you portraying yourself of [sic] someone of authority, a Texas ranger, someone of authority that was going to contact the District Attorney's Office personally; isn't that correct?   Weren't those your words?

11

[Ranger Castañeda]:     Yeah.

          . . . .

[Defense Counsel]:      But you don't dispute the fact that you told him on several occasions that he would be receiving a lesser sentence because you were going to use your position as a Texas ranger to speak to the D.A.'s Office; isn't that true?

[Ranger Castañeda]:     I already said that, yes.

On cross-examination, Ranger Castañeda denied promising Mar anything during the interview and reiterated that he told Mar that he was not in a position to negotiate with the District Attorney's Office.

The defense also questioned Ranger Castañeda about whether Mar invoked his right to counsel during the interview:

[Defense Counsel]:      In fact, at one point Mr. Abraham Mar advises you or informs you that, along the lines that, "Do I have a right to talk to an attorney? I'd like to talk to an attorney." Isn't that true?

[Ranger Castañeda]:     That particular area you're talking about, he advises that he wants to talk to an attorney and that then he will speak to us. And I told him, "Yes, you have a right to an attorney. We're going to get you an attorney." And I continued. He waited a few seconds and continued and stated words to the effect like, "puro chile. I'm going to tell you the way it is."

[Defense Counsel]:      Well, isn't it true that at the point where he requested to speak to an attorney, the reaction—his response was more to a [sic] reaction from, as you know, because were you there [sic]—

[Ranger Castañeda]:     Uh-huh.

          . . . .

12

| [Defense Counsel]: | After he made his unequivocal request for an attorney, wasn't your response one which would cause an individual to continue the line of questioning? |
|---|---|
| [Ranger Castañeda]: | No. I told him that if he wanted an attorney I was going to get him an attorney. We started getting our paperwork, getting ready to leave when he says that he was going to continue talking. |

. . . .

| [Defense Counsel]: | And just to finalize, Ranger Castañeda, you don't dispute that Abraham Mar unequivocally requested guidance and to speak to an attorney? |
|---|---|
| [Ranger Castañeda]: | I guess about—excuse me—about an hour into the interview he says that he wanted to speak to an attorney. And if you listen to the videotape, I said, "You want an attorney. I'm going to get you an attorney." |
| [Defense Counsel]: | And is it your testimony that after that request was made, and you, you know, and you made the statement, you said that you did not make any gesture, any remark that would lead a person to continue an interrogation or give a statement? |
| [Ranger Castañeda]: | Counselor, once he asked for an attorney, as far as I was concerned, that interview was over. |

On cross-examination, Ranger Castañeda testified that after Mar requested an attorney, Ranger Castañeda did not "ask him another question to elicit a response regarding the actual event" and that Mar voluntarily initiated the conversation.

The defense then called Sergeant Anderson to testify and questioned her about the alleged promises made to Mar. Sergeant Anderson could not recall the exact statements made by Ranger Castañeda and referred defense counsel to the videotape.

13

The defense then questioned Sergeant Anderson about Mar's request for counsel:

[Defense Counsel]: During the course of the interview, do you recall Mr. Mar making it clear to you and Ranger Castañeda that he wanted to consult with an attorney?

[Sergeant Anderson]: I believe he made that comment.

[Defense Counsel]: Okay. And that was not honored, was it?

[Sergeant Anderson]: I'm sorry?

[Defense Counsel]: That request was not honored on the part of you and Mr. Castañeda?

[Sergeant Anderson]: I remember getting ready to either clean up or walk out when he started talking again.

[Defense Counsel]: Do you recall making a sigh and saying, "Ay, Mijo," like, "Oh, son." Do you remember doing that immediately after he said, "I want to speak to an attorney?"

[Sergeant Anderson]: I probably did. I don't know, sir. It's on the videotape.

[Defense Counsel]: What was the purpose of you saying, "Oh, son," like implying he was making a mistake?

[Sergeant Anderson]: Oh, I didn't say that.

[Defense Counsel]: Well, that's—what did you mean by saying, "Oh, son," like—

[Sergeant Anderson]: I tend to use that word a lot. I've worked with a lot of children and I tend to use that word. So I probably did say it.

. . . .

[Defense Counsel]: Once he said, "I want an attorney," everything stopped. That means you don't talk to him; you don't suggest to him anything. Do you agree with me on that?

14

| | |
|---|---|
| [Sergeant Anderson]: | Oh, I wasn't asking him or telling him anything. |
| [Defense Counsel]: | Well, then why did you say, "Ay, Mijo?" |
| [Sergeant Anderson]: | It's a form of expression. Like I said, I work with a lot of children. |
| [Defense Counsel]: | Yeah, but you agree with me that that was a direct comment made to my client with regard to his decision not to continue talking to you. |
| [Sergeant Anderson]: | No, sir. I would have to disagree. I believe it was just my expression. |
| [Defense Counsel]: | And really, what was the purpose of that expression? |
| [Sergeant Anderson]: | I do not—I do that a lot. Like I said, I work with a lot of children[,] and I have a tendency to be, I guess, motherly. |

At the end of the hearing, the trial court denied the motion to suppress, stating on the record that:

> The Court, as it has previously indicated, the Court had reviewed the videotape so it could have a good context of whatever the testimony was given. The Court viewed the entire videotape. Based on the Court's viewing of the tape, the testimony given, the Court will deny the motion to suppress.

The trial court did not issue a written ruling on the motion or file findings of fact and conclusions of law.

Mar subsequently pleaded guilty to the charges of attempted capital murder and evading arrest. Punishment was tried to a jury, who assessed a sentence of ninety-nine years' imprisonment on the attempted capital murder conviction. The trial court certified Mar's right to appeal the pre-trial ruling on his motion to suppress. This appeal ensued.

15

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

By his third issue, Mar argues that the trial court failed to make findings as to the voluntariness of his confession, as required by "constitutional and statutory law." Thus, Mar asks this Court to remand to the trial court for the entry of findings.

Mar argues that his right to "due process" and article 38.22, section 6 of the Texas Code of Criminal Procedure require the trial court to enter an order stating its findings, citing *Jackson v. Denno. See* 378 U.S. 368, 378-80 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined."); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. Article 38.22, section 6 provides:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6.

The State argues that Mar waived this complaint by failing to raise it in the trial court. We agree. The record does not contain any request from Mar that the trial court make these findings or an objection that the trial court issue written findings on the motion to suppress. The Texas Court of Criminal Appeals has held that the right to findings under article 38.22, section 6 is "a statutory 'right' which is forfeited by a party's failure to insist upon its implementation." *State v. Terrazas,* 4 S.W.3d 720, 728 (Tex.

16

Crim. App. 1999) (citing *Marin v. State*, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993)). Additionally, in *Terrazas*, the Texas Court of Criminal Appeals held that *Jackson v. Denno* does not require a separate order stating findings on the voluntariness of a confession. *Id.* Under these circumstances, Mar has forfeited his third issue on appeal, and we overrule it.

### III. SUPPRESSION OF THE CONFESSION

Mar argues that the trial court erred by overruling his motion to suppress evidence because his confession was obtained in violation of his right to counsel under the Fifth and Sixth Amendments. *See* U.S. CONST. amends. V, VI. By his first issue, Mar argues that he did not understand his rights and that the police officers continued interrogating him after he validly invoked his right to counsel. By his second issue, Mar argues that his confession was involuntary because the police made repeated threats, promises, and representations to him to induce the confession. We disagree.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We do not engage in our own factual review; rather the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Trial courts are given almost complete deference in determining historical facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable

17

to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). In the case before us, the trial court did not make explicit findings of fact. Under these circumstances, we view the evidence in the light most favorable to the trial court's rulings and assume that the trial court made implicit findings of fact supported by the record. *Ford*, 158 S.W.3d at 493.

## B. Voluntary, Knowing, and Intelligent Waiver

Mar argues that he did not validly waive his right to counsel because his comments during the interrogation show that he did not understand that he would be provided counsel if he could not afford one. We disagree.

Article 38.22 of the Texas Code of Criminal Procedure prohibits the introduction of an interrogation into evidence unless the accused is warned of his *Miranda* rights and unless he knowingly, intelligently, and voluntarily waives those rights. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon 2005); *Miranda v. Arizona,* 384 U.S. 436, 444, 474-75 (1966). "Waiver is shown as a matter of law with regard to pretrial questioning if an accused (1) who has not yet retained or been appointed counsel (2) decides voluntarily not to rely on his right to counsel and (3) decides so with the understanding that he could remain silent and request a lawyer and that the State could use any statement against him." *Hunter v. State*, 148 S.W.3d 526, 533 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd).

At the beginning of the interrogation, Sergeant Anderson informed Mar of his rights, including his right to remain silent and to the appointment of counsel, and Mar signed a waiver and indicated that he understood all of his rights. Later in the interview, the following exchange occurred:

| Ranger Castañeda: | The bottom line. Look, I understand what you're saying, but the bottom line is, there's a good possibility you could go to prison for the rest of your life if you don't cooperate. . . . Abraham, you are not listening at all. You are not listening. Listen to me. Listen to me. Cut the crap about being the victim. You shot that officer. We got you on video. You shot that weapon. We got your license plate on the car on the video. We got the store video doing the same—showing the same thing. So cut the crap about being a victim. You're not a victim on this one. You might have been a victim of the other ones. But on this one where I'm involved, she's involved, you are a—you're not a victim. You shot that officer. We wanna know why you shot the officer. And if you don't wanna tell us, we'll make sure we tell the District Attorney to go ahead and go all the way for ninety-nine years. Because I guarantee you, you wanna get your high-powered attorney, get him. All we have to do is show that videotape to the jury, and you are gone. You'll never see your children again. |
| --- | --- |
| Mar: | I don't even have money to get an attorney. |

We disagree that this exchange necessarily demonstrates that Mar did not understand his right to counsel. In context, Mar's statement could be interpreted as merely a response to the officer's challenge to go get a "high-powered" attorney—not as an expression indicating that Mar did not understand his right to appointed counsel. The trial court was entitled to resolve this fact issue against Mar. *Carmouche*, 10 S.W.3d at 327. We overrule this argument.

## C. Initiation of Interrogation After Invocation of the Right to Counsel and to Remain Silent

Second, Mar agues that after he invoked his right to counsel and to remain silent, the officers initiated further interrogation when they should have terminated it, violating

19

the Fifth and Sixth Amendments.[2]   Mar argues that he invoked his right to counsel, and the statement by Sergeant Anderson, "Ay, mijo," demonstrated her "distress at Abraham Mar's request . . . which clearly influenced Abraham Mar."   Furthermore, Mar argues that he did not initiate further communication with the police.   Mar argues that although he "continued to vent his frustrations, he did not state he no longer wished to speak to an attorney, nor did he recant his request."   Rather, the conversation regarding the offense was initiated by Ranger Castañeda.   The State, on the other hand, argues that Mar initiated the further conversation.

"Once 'an accused has invoked his right to have counsel present during custodial interrogation . . . [he] is not subject to further interrogation by the authorities until counsel has been made available,' unless he initiates the contact."   *Montejo v. Louisiana*, 129 S. Ct. 2079, 2085 (2009) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).   "For a suspect to 'reinitiate' communication with authorities, the suspect's remarks must 'represent a desire . . . to open up a more generalized discussion relating directly or indirectly to the investigation.'" *Martinez v. State*, 275 S.W.3d 29, 35 (Tex. App.–San Antonio 2008, pet. stricken) (quoting *Oregon v. Bradshaw*, 463 U.S. 1039, 1045 (1983) (plurality op.)).   The impetus of the defendant's remarks must come from the defendant, not from "police interrogation or conduct that is the functional equivalent of interrogation."   *Id.* (citing *Moran v. State,* 213 S.W.3d 917, 922-23 (Tex. Crim. App. 2007).   "Interrogation" includes "not only . . . express

---

[2] We note that Mar does not argue that, if we find he initiated the contact, the police were required to demonstrate a second, valid waiver of the right to counsel; therefore, we do not consider that issue. *See Cross v. State*, 144 S.W.3d 521, 526-27 (Tex. Crim. App. 2004) (citing *Oregon v. Bradshaw*, 463 U.S. 1039, 1045-46 (1983) (plurality op.) and holding that *Edwards* requires proof that, after he reinitiates communication with the authorities, the suspect validly waives the right to counsel).

questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980); *see Moran,* 213 S.W.3d at 922-23. The Supreme Court's definition of interrogation focuses "primarily on the perceptions of the suspect, rather than the intent of the police." *Innis,* 446 U.S. at 301. "In determining whether interrogation occurred, we do not look at statements made by the police in a vacuum; rather, we view them in light of the circumstances of the interaction between the suspect and the police on the occasion in question." *Martinez*, 275 S.W.3d at 35.

It is undisputed that Mar invoked his right to counsel by asking for an attorney. Immediately after Mar requested to speak to an attorney, Sergeant Anderson reached under the table to retrieve the waiver of rights that Mar had signed and moved her chair back from the table, apparently packing up her things to leave. As she did this, she muttered, "Ay mijo. Ok." Ranger Castañeda immediately said, "You do have a right to an attorney; You're gonna get that right to an attorney."

Mar argues that Sergeant Anderson made an impermissible comment on his request for counsel by making the comment, "Ay, mijo." Mar argues that this constituted interrogation because it influenced him to confess. We disagree.

Sergeant Anderson referred to Mar as "mijo" throughout the video. She agreed with Mar's counsel at the hearing on the motion to suppress that this statement means, "son." She testified that it was merely an expression she uses because she deals with children often. But more importantly, immediately after she made this comment, she began packing her things to leave, and within seconds, Ranger Castañeda told Mar that

21

he would get an attorney. Mar immediately began talking again. Under the circumstances, the trial court was entitled to find that Sergeant Anderson's comment was not coercive and did not constitute interrogation, based on the totality of the interactions between Mar and the officers. *See Innis,* 446 U.S. at 301 (finding that defendant was not interrogated where the "conversation was, at least in form, nothing more than a dialogue between the two officers to which no response from the respondent was invited."); *Martinez,* 275 S.W.3d at 35.

Mar relies on *Ochoa v. State*, where the Texas Court of Criminal Appeals held that a thirty-to-forty-minute conversation about marital problems, children, and other matters, after which the defendant confessed, rendered the confession inadmissible. 573 S.W.2d 796, 800 (Tex. Crim. App. 1978). We note, however, that the officer in that case expressly admitted that he engaged in the idle conversation with the defendant as a way to "calm and relax him and to 'get on his good side,' and to thus get appellant to make a statement." *Id.* This case is substantially different. Here, Sergeant Anderson merely said, "Ay, mijo," and then Ranger Castañeda immediately told Mar he would get him an attorney.

Additionally, focusing on the defendant's perspective rather than the intent of the police, Mar did not testify at the hearing on the motion to suppress. There is no evidence in the record supporting his argument that, from his perspective, this statement by Sergeant Anderson influenced his decision to initiate further communication with the police. *See Moran v. State*, 213 S.W.3d 917, 923 (Tex. Crim. App. 2007) (finding significant that the defendant never testified that officer's comment that he had spoken to other people caused him to re-initiate conversation with the police and incriminate

22

himself).

Next, Mar argues that he did not initiate further communication, but rather, Ranger Castañeda reinitiated the interrogation. When Ranger Castañeda told Mar he would get him an attorney, Mar immediately interrupted him and began talking again, crying as he spoke. Mar began explaining his background and told the officers that he had psychiatric problems. He said he felt like the police had been bullying him, and he asked Ranger Castañeda how it would make him feel. Ranger Castañeda stated it would make him angry, and asked, "And then what happened?" Mar points out that Ranger Castañeda did ask a question before Mar gave a confession, and he argues that before that question, Mar merely discussed his background with the officers. We hold that Mar's statements constituted an attempt to "open up a more generalized discussion relating directly or indirectly to the investigation." *Martinez*, 275 S.W.3d at 35-36 (quoting *Bradshaw*, 463 U.S. at 1045)).

Throughout the interview, the police told Mar that they did not need to know *what* happened, but they just needed to know *why.* From the beginning, Mar insisted that he had been harassed by the police on numerous occasions. When he finally confessed, this was the reason he gave for shooting Officer Diaz. Thus, it is disingenuous for Mar to now argue that he was only discussing his background. Accordingly, we hold that Mar's right to counsel was not violated. *See id.*

Mar also briefly argues that the interrogation violated his Fifth Amendment right to remain silent. *See* U.S. CONST. amend. V. Mar argues that during the interrogation, he stated that he did not "want to spend any more time with the questioning," and this was an invocation of his right to remain silent, which should have terminated the

23

interview.   The State counters that this was not an unequivocal and clear invocation of the right to remain silent because the context shows that Mar wanted to begin confessing.   We agree with the State.

At the time that Mar made this statement, he was requesting to speak to the district attorney, and he expressly stated that he would talk to the district attorney and "lace him up on what happened."   An interrogating officer is not required to stop his questioning unless the suspect's invocation of rights is unambiguous.   *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). The officer is not required to ask clarifying questions, and "[i]f the suspect's statement is not an unambiguous or unequivocal request [to terminate the interview or to invoke the right to silence], the officers have no obligation to stop questioning him."   *Davis v. United States*, 512 U.S. 452, 461-62 (1994); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010) ("If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation, *ibid.,* or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.").   "Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances."   *Luna v. State*, 301 S.W.3d 322, 325 (Tex. App.–Waco 2009, no pet.).   The trial court implicitly found that Mar's statement was ambiguous, and considering the context, we agree.   Mar did not state that he no longer wished to speak to law enforcement personnel.   Rather, he stated that he wanted to hear from the district attorney about how much time he was facing, and then he would tell the district attorney what happened.   We hold this is not a clear and unequivocal invocation of the right to remain silent.   *See Williams v. State*, 257 S.W.3d 426,

24

434 (Tex. App.–Austin 2008, pet. ref'd) (concluding that accused's request to "terminate everything" was ambiguous because, in context, "appellant appeared frustrated by his detention and was attempting to determine whether he had been arrested."); *Hargrove v. State*, 162 S.W.3d 313, 319 (Tex. App.–Fort Worth 2005, pet. ref'd) (holding that accused's statement that he wanted to "terminate it" was ambiguous and did not require the officer to stop questioning); *see also Davis v. State*, No. AP-74393, 2007 WL 1704071, at *6 (Tex. Crim. App. June 13, 2007) (not designated for publication) (holding right to remain silent was not unambiguously asserted where defendant asked to terminate the interview to go home to see his mother, where the court found the request could be construed as "a desire to continue the interview once his concern about his mother had been satisfied."). We hold that Mar initiated further conversation with the officers, and the confession did not violate his right to counsel or to remain silent under the Fifth or Sixth Amendments. Accordingly, we overrule Mar's first issue.

## C. Promises by Law Enforcement

Mar argues by his second issue that his confession was rendered involuntary by promises from law enforcement. Specifically, he argues that, on numerous occasions throughout the interrogation, Ranger Castañeda told him he would speak to the district attorney on his behalf and that Mar would not get a sentence of ninety-nine years if he cooperated. While Mar acknowledges that Ranger Castañeda also stated he could not make any promises, Mar argues that this type of "deception" rendered his statement involuntary. We disagree.

A statement is involuntary for due process purposes when there is official, coercive conduct such that any statement obtained thereby was unlikely to have been

the product of an essentially free and unconstrained choice. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see also Valdez v. State*, No. 13-04-468-CR, 2005 WL 1953187, at *1-3 (Tex. App.–Corpus Christi Aug. 11, 2005, no pet.) (mem. op., not designated for publication). A confession is rendered involuntary by promises by law enforcement when the promises are (1) positive, (2) of some benefit to the defendant, (3) made or sanctioned by someone in authority, and (4) of such an influential nature that a defendant would speak untruthfully in response thereto. *Sossaman v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1990), *abrogated on other grounds by Graham v. State*, 994 S.W.2d 651, 656 (Tex. Crim. App. 1999).

The third element requires that the officer either have authority to make the promise or appear to have such authority. *See Johnson v. State*, 68 S.W.3d 644, 654-55 (Tex. Crim. App. 2002); *Henderson v. State*, 962 S.W.2d 544, 564-65 (Tex. Crim. App. 1997). In *Johnson,* the Texas Court of Criminal Appeals found that the promises made by the police officers did not render the defendant's confession involuntary because the officers "plainly told appellant that the police could make no guarantees" and "could only relay information to the court and prosecutor." 68 S.W.3d at 654-55; *see also Henderson*, 962 S.W.2d at 565 ("Because appellant knew Napier had no authority, she could not have been improperly induced by any alleged promises.").

Here, Ranger Castañeda clearly and unequivocally stated to Mar that he did not have authority to make any promises with respect to the sentence that Mar would receive, and Mar acknowledged as much. Initially, Ranger Castañeda told him that he might get less time in prison by cooperating, but he qualified that by stating, "I'm not promising anything, number one, I'm not promising anything. But your cooperation

26

means a lot to the District Attorney's office. And me personally, I will contact the District Attorney's office and tell them that you cooperated with us."

Ranger Castañeda told Mar that by talking with the police and cooperating, it might help him avoid a ninety-nine year sentence. He immediately said, however, "I can't promise you anything, you gotta make that perfectly clear." Mar replied, "Yeah, I know." Later in the interview, Mar asked to speak to the District Attorney and stated: "And you're making a promise on that thing because . . . the DA's gonna say how much time I'm gonna get on that, and you know that's against the law to make a promise." Ranger Castañeda clearly stated, "I can't make a promise. The DA can make a promise." Under these circumstances, we conclude that the trial court did not err by impliedly finding that Mar was aware that Ranger Castañeda did not have the authority to promise a lower sentence. *See id.* Therefore, Mar has not established the third element of the *Sossaman* test, and we overrule his second issue.

## IV. CONCLUSION

Having overruled all of Mar's issues, we affirm.


_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P.47.2(B)

Delivered and filed the
6th day of January, 2011.